IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 23, 2017

**KENNETH JACKSON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 106393     Steven W. Sword, Judge**

_____

**No. E2016-01218-CCA-R3-PC**

_____

The Petitioner, Kenneth Jackson, appeals as of right from the Knox County Criminal Court's denial of his petition for post-conviction relief. The Petitioner contends that his guilty pleas were not voluntary because trial counsel stated that she was not prepared for trial the day before the trial was scheduled to begin. Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Kenneth Jackson.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Charme P. Allen, District Attorney General; and Philip H. Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

On April 1, 2015, the Petitioner pled guilty to two counts of selling less than .5 grams of cocaine in a drug-free zone, one count of possession of drug paraphernalia, and one count of failure to appear. A sentencing hearing was held on May 8, 2015, at which the parties announced that they had agreed to a total effective ten-year sentence. Specifically, the Petitioner was sentenced to six years for each conviction for selling less than .5 grams of cocaine, eleven months and twenty-nine days for the drug paraphernalia conviction, and four years for the failure to appear conviction.

The felony drug convictions and the drug paraphernalia conviction were ordered to be served concurrently but consecutively to the failure to appear conviction. The Petitioner was sentenced as a Range I, standard offender with respect to the felony drug and drug paraphernalia convictions and as a Range II, multiple offender with respect to the failure to appear conviction. The Petitioner was required pursuant to the drug-free zone statute to serve the first three years of his six-year sentence at one hundred percent, while the last three years of that sentence was to be served at thirty percent and his four-year sentence was to be served at thirty-five percent.

The events giving rise to the Petitioner's felony drug and drug paraphernalia convictions occurred in September 2010. While those matters were awaiting trial, the Petitioner absconded from the state, giving rise to the failure to appear conviction. The Petitioner's trial was eventually scheduled to begin on April 1, 2015. On March 31, 2015, trial counsel requested a status hearing. At the status hearing, trial counsel announced that she had "presented [the Petitioner] with the final offer from the [S]tate" the pervious afternoon and that the Petitioner had "indicated that he wished to take it." Trial counsel explained that she had the case docketed for a plea submission hearing, but that the Petitioner had contacted her that morning to tell her that he had changed his mind and wanted to proceed to trial.

The following exchange between trial counsel and the trial court then occurred:

[Trial counsel]: I informed [the Petitioner] that since he told me that he wasn't going -- or was planning to plea yesterday, I ceased trial preparations and am not in a position to be ready to go to trial tomorrow and--

[Trial court]: Well, I think you will be. You know, he--this wasn't a deal that was made until today or yesterday, and so any problems that he's caused in the preparation, that's just going to be to his detriment.

So we'll go to trial tomorrow . . . .

[Trial counsel]: Your Honor, I--

[Trial court]: I'll see you tomorrow.

[Trial counsel]: --I understand. I just--I'm--

[Trial court]: I understand.

[Trial counsel]: No. I don't know that I can do my ethical duty to [the Petitioner] tomorrow.

[Trial court]: I think you'll do fine. Do your best to get ready today.

We'll go to trial tomorrow . . . . I'll see you in the morning.

The next day, April 1, 2015, the Petitioner entered a "blind plea" as detailed at the beginning of this opinion. The trial court reviewed with the Petitioner the potential sentences for each conviction and that his sentences would be determined by the trial court at a subsequent sentencing hearing. The Petitioner stated that he understood the potential sentences he faced and that his sentence would ultimately be determined by the trial court. The trial court also reviewed the Petitioner's right to plead not guilty and go to trial. The Petitioner stated that he understood this right and that he was voluntarily pleading guilty.

The trial court then reviewed the various individual rights that the Petitioner would be waiving by pleading guilty. The Petitioner stated that he understood those rights and that he was waiving them by pleading guilty. The trial court asked the Petitioner if he was satisfied with trial counsel's representation, and the Petitioner replied that he was. The trial court also asked the Petitioner if he had any questions about the plea agreement, and the Petitioner responded that he did not. On May 8, 2015, the parties announced their agreement on the Petitioner's sentences. Prior to accepting the agreement, the trial court asked the Petitioner if there was "anything [he] want[ed] to say before [it] sentence[d] [him] in [his] case," and the Petitioner responded that there was not.

On September 21, 2015, the Petitioner filed a pro se petition for post-conviction relief alleging that his guilty pleas were involuntary because trial counsel had stated the day before his trial was scheduled to begin that she was not prepared for trial.[1] An attorney was appointed to represent the Petitioner, and an amended petition also raising the issue of the voluntariness of the pleas was filed on March 4, 2016. The post-conviction court held a hearing on this matter on April 29, 2016.

The Petitioner testified at the post-conviction hearing that prior to April 1, 2015, he never told trial counsel that he was willing to accept a plea agreement. The Petitioner claimed that trial counsel did not approach him with a plea offer from the State until approximately a week before his trial was scheduled to begin. The Petitioner further claimed that trial counsel assured him that if he accepted the plea agreement, he would

---

[1] The petition raised other grounds for post-conviction relief. However, this issue was the main issue addressed at the post-conviction hearing and the only issue raised on appeal.

only have to serve twenty months before he would be eligible for parole. Nevertheless, the Petitioner claimed that he insisted on going to trial.

The Petitioner testified that he felt trial counsel was "ready to go to trial" until the March 31, 2015 status hearing. The Petitioner stated that, at that point, he felt he had no choice but to plead guilty. However, the Petitioner also claimed that trial counsel did not ask for a continuance at the status hearing. Instead, the Petitioner claimed that trial counsel did not have a formal offer from the State but presented him with "a little scratch piece of paper writing it down herself" and insisting that he had to agree to plead guilty by 2:30 that afternoon. The Petitioner further claimed that he could not recall the trial court's reviewing the plea agreement and his rights with him because his "mind was somewhere else." The Petitioner claimed that he did not speak during the plea submission hearing and that, if he did speak, he was "only doing what [his] lawyer" told him to do.

The Petitioner claimed that he wanted to withdraw his guilty pleas at the May 8, 2015 sentencing hearing but that the trial judge "jumped up from the stand and walked off." When asked why he told the trial court that he did not want to say anything prior to his sentencing if he wanted to withdraw his guilty pleas, the Petitioner responded that he "was so hurt inside . . . [that he] couldn't speak." The Petitioner also claimed that trial counsel never discussed with him the possible sentences or what the sentencing agreement provided. According to the Petitioner, he did not learn about what he had been sentenced to until trial counsel sent him a letter in June 2015 "explaining [his] sentence after [he] waive[d] . . . [his] right[s]." Despite having enough prior convictions to qualify as a Range II, multiple offender, the Petitioner asserted that he did not have a "criminal record" and that this was his "first time ever been [sic] in this." The Petitioner also claimed that trial counsel never discussed his criminal history with him or what impact his prior convictions would have on his sentences in this case.

Trial counsel testified that she discussed with the Petitioner the potential sentences he faced if he went to trial throughout her representation of him. Trial counsel explained that the Petitioner had one prior felony conviction in Tennessee and several prior convictions in Alabama. Trial counsel believed that the Alabama convictions would at least elevate the Petitioner to a Range II, multiple offender and could possibly elevate him to a Range III, persistent offender. Trial counsel further explained that if the Petitioner had gone to trial and been convicted as a Range II, multiple offender he would have faced a mandatory minimum of six years to be served at one hundred percent as opposed to the three years he is currently serving as a result of the plea agreement.

Trial counsel testified that the State had initially offered to allow the Petitioner to plead guilty to selling less than .5 grams of cocaine without the drug-free zone enhancement, allowing the Petitioner to avoid the mandatory minimum three-year

-4-

sentence. However, the Petitioner rejected this offer and then absconded from the state. Trial counsel testified that the State never offered the Petitioner a probationary sentence. Trial counsel recalled that the Monday before the trial was scheduled to begin, the State offered a plea agreement with a total effective sentence of nine years. Trial counsel testified that she presented this offer to the Petitioner and that he accepted it. According to trial counsel, she had spent the weekend preparing for trial, but she "backed off" once the Petitioner stated that he wanted to accept the plea agreement.

Trial counsel testified that the day before the trial was scheduled to begin the Petitioner told her that he had changed his mind and wanted to proceed to trial. Trial counsel admitted that she told the Petitioner that she had "kind of quit working on [his] stuff" when he initially agreed to accept the guilty plea. Trial counsel further admitted that she told the Petitioner that she "didn't know if [she] could be ready" for trial the next day. However, trial counsel testified that after the status hearing, she began preparing for trial and was getting the Petitioner clothes to wear at trial when he called her around 4:30 p.m. The Petitioner told her that he had changed his mind again and wanted to accept the plea agreement.

Trial counsel testified that she informed the Petitioner that because his trial was scheduled to begin the next morning, he would have to enter a "blind plea" to the charged offenses and attempt to get a concession from the State on his offender range. Trial counsel further testified that she asked the Petitioner if he was sure that he wanted to plead guilty and told him that she would work all night to be ready for trial the next day. According to trial counsel, the Petitioner said that he wanted to plead guilty and gave her "his stack of papers . . . as a show of good faith that that's what he wanted." Trial counsel testified that prior to the Petitioner's sentencing hearing, she explained his sentences to him and made "little bracketed drawings of this is what this time is going to be and then it'll be followed by this time" on a sheet of paper.

Trial counsel testified that she believed the Petitioner was reluctant to accept a plea agreement because he had never served time in prison before. However, trial counsel also believed that the Petitioner understood "the process," his rights, the plea agreement, and his eventual sentencing agreement. Trial counsel further testified that she believed that Petitioner did not plead guilty because he felt forced to but because he "had recognized that [the plea agreement] was what was in his best interest."

On May 18, 2016, the post-conviction court entered a written order denying post-conviction relief. The post-conviction court accredited the testimony of trial counsel over the Petitioner's testimony. The post-conviction court concluded that the Petitioner had failed to show that trial counsel was unprepared for trial given the time she had previously spent preparing and her offer to work through the night to be ready for the start of the trial. The post-conviction court further concluded that the Petitioner's plea

-5-

was voluntary in light of his statements at the plea submission hearing and the fact that he received a mandatory minimum sentence of three years rather than the mandatory minimum sentence of six years he faced if he had been convicted at trial.

## ANALYSIS

On appeal, the Petitioner contends that his guilty pleas were involuntary because of trial counsel's statement that she was not prepared for trial the day before his trial was scheduled to begin. The State responds that the Petitioner has failed to prove his factual allegations by clear and convincing evidence.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. However, we review the post-conviction court's application of the law to its factual findings de novo with no presumption of correctness. Id. at 457.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger, 279 S.W.3d at 293 (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to

counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In the context of a guilty plea, like the present case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

Here, trial counsel admitted that she told the Petitioner the day before his trial was scheduled to begin that she had stopped preparing for trial and was unsure if she would be ready. Trial counsel also made similar statements to the trial court. However, this situation was caused by the Petitioner's informing trial counsel that he wanted to accept a plea offer from the State and then withdrawing that acceptance the day before his trial was scheduled to begin. Furthermore, trial counsel testified that she had spent the previous weekend preparing for trial, that she immediately began preparing for trial after the status hearing, and that she told the Petitioner that she would work through the night to prepare for trial when the Petitioner stated that same afternoon that he wanted to accept the plea offer. Trial counsel testified that she believed the Petitioner understood the plea agreement and eventual sentencing agreement, that he wanted to plead guilty because it was in his best interest, and that he voluntarily pled guilty. Additionally, there is nothing in the transcripts of the plea submission and sentencing hearings to suggest that the Petitioner had involuntarily pled guilty. Accordingly, we conclude that the post-conviction court did not err in denying the petition.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE